Our next case this morning is 523.1317 Ahrma Ahrma Exchange v. Christian County Development Corp. et al. I've got Mr. Dinsmore for the appellant and I want to make sure Ms. Kuhlenkamp is on behalf of the appellee. Again, I don't think there's any procedural issues we need to address with this case. Counsel, are you ready to proceed? Then go right ahead. Good morning, Your Honors. My name is Mark Dinsmore and I represent Ahrma Exchange. May it please the Court. Your Honors, there is one issue in this appeal, and that is whether the trial court erred in finding that the management liability policy issue does not exclude the claim to serve against CCDC in the underlying lawsuit. Now, CCDC contracted with the underlying plaintiffs to manage properties owned by those plaintiffs, and those services were subject to agreements entered into by CCDC with those underlying plaintiffs. Each agreement requires CCDC to obtain an error and omissions insurance policy covering the negligence or negligent acts of its officers, employees, and other persons acting in any capacity with respect to the property or the handling of funds, money, documents, and papers relating to the property. Now, errors and omissions policy is equivalent, essentially, to a professional liability policy. Here in this case, though, we're analyzing a management liability policy, which are usually made up of various types of coverage, for example, employment practices liability insurance, which is designed to safeguard an organization from claims by employees, applicants, or third parties alleging employment practices violations, like sexual harassment, discrimination, wrongful termination, or violation of employee civil rights. So we are talking about two different policies, and CCDC seems to be requesting that the court analyze this policy as if it's an error and omissions policy and apply it in that manner when it's not. Now, the two primary exclusions at issue in the management liability policy that I wanted to focus on are the exclusions found in subsections K and L. Now, subsection K, which is slightly broader in its scope, provides that no coverage is going to be provided to the insured for claims based upon arising out of, directly or indirectly resulting from, or in consequence of, or in any case, by the insured. That is, in any way involving the service of any insured for any person or entity other than those listed on the declarations. Similar to subsection K, subsection L's exclusion provides that it is not going to provide coverage for the insured for claims based upon arising out of, directly or indirectly resulting from, or in consequence of, or in any way involving, the rendering or failure to render by any insured. Any service, if such service was rendered or not rendered, for compensation from any source other than the insured. And in this case, your honors, the management liability policy, the declaration page, only identifies CCDC as an insured. So these policies, when they're discussing excluding coverage for the insured, they're only talking about CCDC. And so when they reference, in particular, subsection K, that it's not going to cover any service of any insured for any person or entity other than those listed on the declarations, it's only referring to CCDC and no one beyond that. CCDC is the only name insured under that particular portion of the coverage agreement, and there are no other entities listed on the declarations pages. If the underlying plaintiffs have been named as insureds under that, on that declarations page, that would change the analysis here. That's not what we have. So it's clearly excluding those claims against CCDC for the services that are rendered to others, the others being the underlying plaintiffs. And the same applies to subsection L in this case. The CCDC rendered services for compensation from a source other than the insured. So CCDC, pursuant to these agreements, agreed to provide certain management services to the underlying plaintiffs pursuant to those agreements. And because of that, they were entitled to certain compensation. But any claims based on that are excluded under subsection L. Now, here CCDC is the only name insured under declarations. I will acknowledge that the underlying plaintiffs, in some instances, have been identified on attached endorsements. But that only relates to general liability policies, which the trial court and CCDC both acknowledge does not provide coverage in this case. So it's not an issue. So here we have CCDC the only name insured on the declarations page, and that's why those subsections apply in this instance. In this case, CCDC has attempted to argue that there is an ambiguity in these two subsections of the policy excluding coverage. Yet CCDC does not point out or identify what the ambiguity is or why the court should find that ambiguity exists. They simply have argued that these policies or these provisions are ambiguous, and because of that, the court should find that coverage is provided to CCDC under the policy. Now, subsections K and L, these exclusions are much changeable. These apply to counts 1 and 2 to exclude coverage in this case. We have cited a number of other exclusions that we believe are potentially applicable, those being subsections A, B, E, M, and N. And we have, of course, cited those in our briefing. But those particular sections potentially have or bring up a question of fact in light of the scope of the allegations as pled the underlying lawsuit. However, though, as it relates to count 2, in addition to subsections K and L, I believe that count, or excuse me, subsection N also acts to preclude coverage for CCDC in this case. In count 2 of the underlying lawsuit, the plaintiffs have alleged that a fiduciary relationship existed between CCDC and the underlying plaintiffs in light of the agreements reached between those parties. And that is the basis for count 2 in and of itself. And subsection N of the exclusion section excludes coverage for wrongful acts by the insured while acting as a fiduciary. And because of that, I believe that it clearly excludes the claims in count 2 of the underlying lawsuit. In addition, in relation to count 2, I believe that the exclusions A, B, E, and M may also potentially exclude coverage in this case. But in light of the controversy of the facts alleged, determining this declaratory judgment action at this point may be premature and perhaps resolution on those particular exclusions is better left to a later date after the facts of the resulting underlying case. For those reasons, we believe that the trial court erred in finding that the management liability policy does not exclude coverage for the claims by the underlying plaintiffs. We would ask this court to reverse the finding of the trial court. Thank you. Counsel, does ARMA Exchange also provide an errors and omission policy for Christian County? No. Okay. Are you aware if anyone else does? And that's probably a better question for your opposing counsel. Yeah, I'm unaware of whether anybody does. Okay. Any questions? All right. Thank you, counsel. You have time for a vote. I'm assuming you were finished. Yes, Your Honor. Okay. Thank you. Good morning, judges, and may it please the court. My name is Carly Kuhlenkamp, and I represent the Appellee Christian County Development Corporation, whom I'll refer to as CCDC moving forward. So as the appellant ARMA has set forth, there's sort of two main issues that we would like to address here. First is what is the scope and application of this management liability policy? And two, whether or not these exclusions apply, whether or not there's ambiguity, or whether or not the underlying allegations do in fact support the application of these exclusions. Now, regarding the application of the policy, it is CCDC's position, as the trial court had also noted, that the management liability policy is to provide coverage for liability arising from the operations and management of the business ventures and holdings of CCDC as the insured. Now, there's been references to employment liability and how management liability can be applied differently, but we're looking at the four corners of the policy in and of itself. When you're looking at the four corners of the policy, at nowhere does it say within the coverage grant, within the insured, or wrongful act definitions does it state, this is for employment practices, this is for internal management. None of that language is applicable there. There are mentions of employment matters within the exclusions, but those are merely caveats to a handful of exclusions and cannot be then used to narrowly confine the application of this policy. Now, it's important to note what the purpose of this policy is, because as we've noted, that's where the ambiguity arises specifically with the application of exclusions K and L. Now, as the appellant has set forth, exclusions K and L regard either services provided generally to individuals or entities who are not listed on the declarations, or services for commission. Now, when you're applying those, and you also are looking at the purpose of the document and the policy as a whole, then that's where the ambiguity arises, because those exclusions effectively eviscerate the policy. If we have liability insurance for the management and decision makings regarding management of our holdings and our business practice, and now we have exclusions that say any contracts or services that you're providing to outside individuals or entities, you're not providing coverage. And that's where we're raising the matter of ambiguity and saying, why would CCDC as a corporation purchase this management liability policy if there was not to be coverage in instances of it conducting its management practices? Next, moving on to the exclusions A, B, M, and N, I want to take note of what the appellant specifically says that they potentially apply. Now, what the case law says is that if the allegations of the underlying complaint potentially can fall under coverage, then there's coverage. It's not the other way around. So the fact that the allegations potentially apply means that there's a potential to the exclusions means there's a potential they don't, which means that there needs to be coverage provided until another time, another decision is made. We believe that these arguments apply further to count two as well. And further noting in regards to exclusion N regarding the fiduciary relationship, we would again argue for a fiduciary relationship to be there's either a relationship, such as an attorney-client or a principal-agent, or there's special circumstances. None of those are listed in the underlying allegation. And to prevent coverage to be applied because the underlying plaintiff throws out a legal conclusory term would just not be reasonable in its application. Now, if it's later decided there's a fiduciary relationship, that's a different decision. But until that time, CCDC under the policy terms has the right to be provided coverage because there is a potential for coverage to exist. And we believe that, therefore, from those reasons, when you're looking at the policy as a whole, you're looking at whether there's a potential for coverage, and you're looking at the application of the exclusions and the real world application for what we intended our policy to cover, then we believe that it was correct to find that CCDC is provided insurance coverage in this matter. If the court has any questions, I'm happy to answer. Otherwise, I would conclude my time. I'll ask that same question. Are you aware, does CDDC have an errors in admission policy? Not to my knowledge, Your Honor. Our insurance is purely with ARMA. Thank you. Thank you. Just some more? Thank you. Your Honors, we cited in our brief citation to a website that notes that employment practices liability insurance is part of this management liability policy. And so to suggest anything otherwise, court does not take into consideration the website and information contained therein. In addition to that, I believe a clear reading of the policy suggests the same thing based on what employment practices liability insurance is designed to cover. It's consistent with that type of coverage, and the exclusions are consistent with that type of policy. The suggestion, I guess, that CCDC was looking to provide or obtain insurance coverage to provide coverage for management issues or acts or omissions in management, I guess it just boils down to they bought the wrong policy or purchased the wrong policy. We talked about that earlier, error omissions policies versus management liability policy. This policy, as previously stated, is designed to address issues internally within the organization, management problems and neglect within the organization that results in claims of discrimination, sexual harassment, those types of claims. And that's why you see specifically in the exclusions found in KNL, exclusion of claims brought against the insured, CCDC, in relation to its services or acts where it's working with people that are not named insureds, not part of the organization or related to it, or receiving compensation from those other organizations. That's where those exclusions come in to exclude the types of claims that are being brought by the plaintiffs and the underlying lawsuits. I'd also like to point out that in terms of fiduciary relationship, CCDC is asking this court to find as a matter of law that the allegations do or do not rise to the level of fiduciary relationship. And so they are asking the court to go beyond that which the trial court found and really decide an issue that is more properly a decision of the trial court. And I guess I would add that to the extent that this court were to try and determine whether or not a fiduciary relationship does arise by the allegations themselves, then the court may be making a determination that could affect or be crucial to the liability of the plaintiff's underlying case. But all that aside, there's no doubt that in the underlying lawsuit, they allege that a fiduciary relationship existed. Whether or not the court were to find that one existed, the trial court that is, has nothing to do with whether or not they have actually alleged that and whether that falls within the scope of coverage or not under the management liability policy. So for those reasons, Your Honors, I would ask that the court reverse the trial court's finding and rule that the management liability policy does exclude coverage for the underlying lawsuit. Any final questions? Thank you, counsel. Obviously, we will take the matter under advisement. We will issue an order in due course.